ARCHIBALD C. WADSWORTH

*v.*

MARY M. CONNELL *et al.*

*Filed at Springfield September 28, 1882.*

1. FORMER ADJUDICATION—*what matters to be regarded res judicata.* An order or judgment of the county court on an executor's final account presented, sustaining an objection to his claim of commissions, in part; but reserving a decision on the other objections, is not *res judicata* as to those claims of credit by the executor on which the judgment of the court was reserved for further evidence, presented in an amended account, and to which objection was made on appeal to the circuit court from the subsequent order of the county court approving the report, and hence no bar to contesting such other items in the circuit court.

2. TESTAMENTARY GUARDIAN—*necessity of giving bond and receiving a commission before actually becoming guardian.* The statute relating to guardians authorizes a parent to appoint a testamentary guardian for the custody and education of his minor child, and the custody of its property, or to give the custody and tuition to one and the custody of the property to another; but the guardian of the property is required to give a bond, as in other cases, unless this is dispensed with by the will, and to receive a commission from the county court to act, and when such bond is not so dispensed with, such appointee will not become the guardian of the minor until he gives a bond as such, and is commissioned by the county court.

3. EXECUTOR—*as such, has no power to loan funds of the estate.* An executor has no power, under the law, to loan the funds of the estate, and if he does so, it is of his own wrong, and he must be held accountable to the heirs for any loss in consequence of such loaning. Nor has the county court authority to give him credit for any moneys so lost, and thus render an illegal act valid. Such allowance, when the widow and heirs are not in court on the approval of his report, is void for want of jurisdiction.

4. EXECUTOR—GUARDIAN—*in which capacity liable.* Where an executor of a will, under a power therein conferred upon him, sells the real estate of the testator, and receives the proceeds as executor, he must be held as holding the money in that capacity, though he may have also been appointed testamentary guardian of the testator's minor children, when he has failed to qualify in the latter capacity.

5. If one appointed by will as executor and also as testamentary guardian, qualifies only in the former capacity, so that he is not a legal guardian, but nevertheless acts as such by loaning the funds of the estate, which he might have done as guardian had he qualified in that capacity, he will in equity be held liable to account as guardian; and if he loans the funds of the estate as executor, in which capacity he has no authority to do so, and a loss occurs, he will be required to make it good on the settlement of his accounts before the county court.

6. COUNTY COURT—*its equitable jurisdiction.* The county court, in the settlement of estates, has equitable jurisdiction—not full jurisdiction, but such as is adapted to its organization and modes of proceeding. That court, or the circuit court on appeal, may apply equitable relief in the settlement of the accounts of executors and administrators, and hold them liable for loss upon equitable principles and rules.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BROWN, KIRBY & RUSSELL, for the appellant:

The matters here in controversy were heard and determined by the county court, from which judgment no appeal was taken, and it is conclusive. *Wadhams et al.* v. *Gay,* 73 Ill. 417; *Boileau* v. *Rutlin,* 2 Exch. 665. The items of the executor's report are separate and distinct, and the judgment on any one is conclusive. *Curts* v. *Brooks,* 71 Ill. 126; *Morgan* v. *Morgan,* 83 id. 196. An appeal being given, unless it is taken the order of the county court must stand as final and

conclusive.   *Gates* v. *Treat*, 17 Conn. 392 ; *Dubois* v. *Dubois*, 6 Cow. 495.   It is immaterial what the form of the judgment is.   If the court can see that the issue in the former suit is the same as in the suit at bar, and the order is entered on that issue, it is sufficient.   *Guild* v. *Hall*, 91 Ill. 223 ; *People* v. *Gray*, 72 id. 343 ; Freeman on Judgments, secs. 47, 50.

Mr. Wadsworth, in his trust capacity, carried out the expressed will of the testator, used as great care as the law requires, and can not be held personally liable for a loss.   If he is guardian at all, it is under the power contained in the will, and his action is measured and limited by its terms. Tyler on Infancy, 250, sec. 170.   The will is the sole measure of his duty.   *Waldo* v. *Cummings*, 45 Ill. 421.   A fair interpretation of that is, that he shall exercise the prudence and care which a good business man would exercise in his own affairs.   The statutory provision as to loaning a ward's money, no matter how construed, can not bind him.   As a trustee he was not bound to invest on real estate security. It is sufficient that he conducts himself faithfully, and exercises a sound discretion.   *Lowell* v. *Minott*, 20 Pick. 119 ; *Harvard College* v. *Amory*, 9 id. 446 ; *Clark* v. *Garfield*, 8 Allen, 427 ; *Carter* v. *Elliott*, 9 Gratt. 511 ; *Myers* v. *Zetelle*, 21 id. 733.

Executors and administrators stand in the position of those interested in the estate which they administer, and are only liable for want of due care and skill.   *State* v. *Meager*, 44 Mo. 356 ; *State* v. *Richey*, 64 N. C. 172.

Mr. M. T. LAYMAN, and Mr. J. B. CONNELL, for the appellees :

The county court made no final order or judgment on the account, in February, 1881, and hence the order then made is no bar.   *Forgay* v. *Conrad*, 6 How. 206 ; *Bernard* v. *Gibbon*, 7 id. 650 ; *Craighead et al.* v. *Wilson*, 18 id. 199 ;

*Rudolph* v. *German Mutual Fire Ins. Co.* 71 Ill. 191; *Vanlandingham* v. *Ryan,* 17 id. 25.

The executor was a testamentary guardian. He settled with the heirs as such, and mingled the funds held in such capacity in his reports, and can not now be heard to say because he failed to give bond he is not guardian. He can not take advantage of his own wrong, but will be presumed to have done what he should have done. *Bell et al.* v. *People,* 94 Ill. 230. It was his duty to have put his ward's money at interest on real estate security. *Gilbert* v. *Guptil,* 34 Ill. 112. Taking insolvent securities is *prima facie* evidence of a neglect of duty. *Curry* v. *People,* 54 Ill. 263. An administrator is liable for allowing money to remain in bank until the bank becomes insolvent. *Rucker* v. *Redman,* 67 Ill. 187.

As to the duty of a trustee to loan the trust funds, and his liability for loss from insufficiency of security, see Perry on Trusts, secs. 453, 460; Hill on Trustees, *369; *Lathrop* v. *Smalley,* 12 Am. L. R. (N. S.) 198; *Norris' Appeal,* 12 id. 787; *King* v. *Talbot,* 9 id. 62; *Worrell's Appeal,* 2 id. (O. S.) 447; *Smith* v. *Smith,* 4 Johns. Ch. 281; *Ackerman* v. *Emos,* 4 Barb. 626; *Holmes* v. *Dring,* 2 Cox, 1; *Watts* v. *Girdlestone,* 6 Beav. 188; *Child* v. *Child,* 20 id. 50; *Pocock* v. *Reddington,* 5 Ves. 794; *Mills* v. *Osborne,* 7 Sim. 30; *Gray* v. *Fox,* Saxton, 259; *Moore* v. *Hamilton,* 4 Flor. 112; *Nyce's Estate,* 5 Watts & Serg. 254; *Worrell's Appeal,* 9 Barr, 508; *Morris* v. *Wallace,* 3 id. 319; *Commonweath* v. *McAlister,* 4 Casey, 480; *Hemphill's Estate,* 6 Harris, 303.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is conceded that Joseph O. Connell died in the year 1867. He made and published his will, which was probated. By it he made some specific devises. He also bequeathed to his wife one-third of the remainder of his estate for life, and the remaining two-thirds he divided equally between his three children. His estate consisted principally of real estate, and

he required his executor to sell it at such time, and on such terms, as might be advantageous, and to invest one-third of the proceeds for the benefit of his widow during her natural life, "with as little delay as possible, on safe securities." Wadsworth, the executor, is named in the will as guardian for his children, and to him is committed their care, tuition, and the management of their property, and to provide for their education, and moral and religious training, and by his personal and judicious investments, and the care of their expenses, to improve their estates. Wadsworth qualified as executor, but not as guardian. He took charge of, and sold, the property, and made reports annually to the probate court; kept the money invested at the highest legal rate of interest, none being lost but two loans, of $500 each, one to the Seiberts and the other to the Dunlaps. In his report to the court these loans were included, and the reports were approved.

Wadsworth, on the 23d of October, 1880, filed a report and asked a final settlement, and to be discharged as executor, and to be relieved from further executing the trust. In this report he credited himself with commissions on the amount to be paid over to his successor, and some other commissions on former disbursements. To this report appellees filed objections to the allowance of the commissions, and to allowing him a credit for the amount lost on the loans to the Seiberts and the Dunlaps. A hearing was had on these objections on the 19th day of February, 1881. The court sustained the objection to allowing the commissions, in part, and reserved a decision on the other objection until the amount due the widow should be ascertained. No appeal from this order was ever perfected. On the 22d of the same month, appellant having filed an amended report, as was required by the order of the 19th, a hearing was had. To this amended report no objections were filed, and it was approved. An appeal was perfected to the Morgan circuit court by appel-

lees.   On a trial in that court, it was found that two-thirds of the money loaned by appellant to the Dunlaps and to the Seiberts was held by him as testamentary guardian of Eva, Joseph B., and Charles H. Connell, and was their money, with which he should be charged, and which was found to amount to $933.33.   The court also found there was in his hands $731.67, due to the widow, and to Charles H. Connell $3617.78.   The court ordered him to pay the widow the sum found due her, and that he pay Charles H. $3509.25, and retain out of these sums, for his own use, $108.53, as commissions, and that he turn over to his successor the balance of the assets in his hands, including the moneys loaned to the Dunlaps and the Seiberts, amounting to $1257.44.   From this order the executor appealed to the Appellate Court.   On a trial in that court the judgment of the circuit court was affirmed, and he appeals to this court.

It is urged that the order of the 19th of February, 1881, involving the same matters presented in this case, precludes any further litigation of the same matters, as that order was not appealed from, and remains in full force; or, if that is not conclusive as *res judicata*, that the order is erroneous in holding that appellant was testamentary guardian, and holding him liable as such, and in also holding him liable for the loss of the money loaned to the Dunlaps and the Seiberts. We are at a loss to perceive how it can be held that the order of the county court of the 19th of February is *res judicata* as to this claim.   There is no pretense that it was passed upon or decided at that time.   On the contrary, it was expressly held up, and a decision withheld, until further evidence was heard and additional facts were ascertained.   It is believed that no case has ever gone the length of holding anything *res judicata* short of a judgment on the facts in controversy.   If such a decision could be found, it would be violative of plain legal principles, and would not be authoritative.   There was no decision rendered on the question of

the liability of appellant, by the order of the 19th of February, and there is, therefore, no bar to this judgment or order of the circuit court.

But was appellant a testamentary guardian? He was so named by the will, but he never qualified by giving bond or receiving letters of guardianship. The 5th section of the chapter entitled "Guardian and Ward," authorizes the parent to appoint a testamentary guardian for the custody and tuition of his unmarried minor child. The 6th section of the act provides that the custody and tuition of the minor may be given to one, and the custody and control of his property to another, guardian. The 8th section confers on a testamentary guardian the same powers, within the scope of his appointment, as a guardian appointed by the county court. The 9th section provides that a testamentary guardian, except for the custody and tuition of the minor, shall, before he can act, be commissioned by the county court of the proper county, and give the bond prescribed in section 7 of this act, unless otherwise requested by the testator in his will, when none shall be required, unless the guardian's circumstances have changed, or for other sufficient reasons a bond may be required. It seems that counsel in the case were not aware of these provisions, or decisions of this court bearing on this question, as they are not referred to in their briefs. When considered together, the 5th and 9th sections authorize the appointment of a testamentary guardian for the custody and tuition of the minor, and the custody of his property, or to give the custody and tuition to one, and the custody of the property to another. The guardian of the property is expressly required, unless otherwise provided by the will, to give bond, as in other cases, and to receive a commission to act. The will in this case does not dispense with a bond, and none being given, and no commission being issued, appellant never became the guardian of the minors. It is but as if the county court should designate of record the

appointment of a person as a guardian, and he were never to give bond or receive letters of guardianship. He could not, by such an order, become a legal guardian, because the statute has made a bond indispensable. So of the appointment by will.

In what capacity, then, does appellant hold this property? He was appointed, and qualified, as executor. He entered upon the discharge of the duties of the trust, and in pursu-·ance of the powers conferred by the will he sold the property and converted it into money. This he did as executor. There can be no reasonable claim that this was done as guardian, as the power is given in connection with his appointment as executor, and no such power is conferred on him as guardian. It was as executor, and not as guardian, that he received the money, and he so holds it, as it was never paid over to a guardian, and he never became such. The statute has not conferred on executors or administrators power to loan the funds of the estate, nor was there any such power conferred by this will. It then follows, that appellant made these loans without legal authority, and of his own wrong. This being the case, what are his liabilities? Having wrongfully retained the money, and failing to pay it over to those entitled to it, as required by the statute, he has clearly rendered himself liable for the amount thus received, with interest, less any sum or sums paid out under the order or by the approval of the county court. Nor can he be heard to say, as a defence, that he, of his own wrong, and without legal authority, loaned the money, and it was thereby lost. He loaned it at his peril. Nor had the county court any power whatever to render an illegal act valid and binding. That was without jurisdiction, and void, as the widow and heirs were not in court when the report was approved. Appellant is therefore liable to account for these loans to the Dunlaps and the Seiberts for the full amount.

In the cases of *Gilbert* v. *Guptill*, 34 Ill. 112, and *McIntyre* v. *The People*, 103 id. 142, we held that a guardian failing to

conform his acts to the statute, and loaning money contrary to the requirements of the statute, does so at his own risk, and in case of loss he is liable to make it good; and the same principle applies to all persons entrusted by the statute with the custody of the money of others. Their safety consists in an adherence to legal requirements. In the case of *Davis* v. *Harkness*, 1 Gilm. 173, it was held that where a step-father received the money of his minor step-children, by reason of his marriage with their mother, who held their money as administratrix of their deceased father, and he appropriated it to his own use, and claimed it as his own, in equity he would be held and required to account for it, as their guardian, and would be held to the duties imposed on guardians appointed by law for the custody of the property of minors. Under this decision appellant may be held in equity as a guardian, and under *Gilbert* v. *Guptill, supra,* he rendered himself liable by failing to loan on the security required by the statute.

The 22d section of the Guardian's act requires the guardian to keep the ward's money loaned at interest, upon security to be approved by the court. It allows sums of less than $100 to be loaned on personal security, but loans in large amounts shall be on real estate security. If, then, as he may be, appellant be held as a guardian, he did not loan this money on real estate security, as the statute requires, and he is therefore liable for its loss. Then, whether appellant held the money as executor or guardian, he is liable to make good the loss. The law does not authorize an executor or administrator to loan the trust fund in his hands. The will in this case authorized him to loan the money as guardian, but not as executor, and, as we have seen, he never became the guardian of the minors, by giving bond as guardian, by the law. But under the above authorities he may be held to account as guardian, if he so acted in making the loans; or if he acted as executor, it was without authority, and he is liable.

If it be said that it is only in equity that appellant can be treated as a guardian, and this was simply a settlement before the court of his accounts as executor, it may be answered that it has been repeatedly held the probate court may exercise equitable jurisdiction in the settlement of estates,—not its full jurisdiction, but such as is adapted to its organization and the mode of proceeding in that tribunal. *Moore* v. *Rogers,* 19 Ill. 347, *Hurd* v. *Slaten,* 43 id. 348, *Dixon* v. *Buell,* 21 id. 203, and *Moline Water Power, etc.* v. *Webster,* 26 id. 233. The county court is as competent to afford the relief in this case as a court of equity, and it pertains to the settlement of the estate. It therefore follows, that on this ground the county court, or the circuit court on appeal, had full power to apply the equitable relief, and hold appellant liable for this loss.

On either of these grounds appellant was liable, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*