Shepard v. Speer.

HENRY M. SHEPARD, ADMINISTRATOR,

v.

JAMES P. SPEER ET AL.

*Administration—Probate Courts—Jurisdiction of.*

1. As a general rule Probate Courts may, in the adjudication of matters committed to their jurisdiction, exercise equitable as well as legal power.

2. A Probate Court is empowered to undo what has been done therein by fraud in the administration of an estate, whether it is in the procurement of the allowance of a claim by fraud, or in an order finding a settlement.

3.  When a party comes into a court of equity asking the benefit of a former judgment or decree he must be prepared to show, if the case requires it, that the decree was just and right.

4.  In exercising its insolvent jurisdiction the County Court is clothed with the same equitable powers that the Probate Court is in the administration of estates.

5.  In the case presented, this court holds that for anything that appears from the allegations of the bill filed herein, the Probate Court has power, full and adequate, to settle the estate in question, direct the distribution, and discharge the complainant from his trust; and that there is no occasion to deprive said court of power and jurisdiction over the estate; that all matters of set-off and contribution justly existing between the parties who are claimants to the fund in the hands of the administrator, can be fully adjusted and determined in that court, and if the evidence shows a case which would authorize a court of chancery to deny the payment of a claim named, the Probate Court is fully clothed with power to grant the same relief.

[Opinion filed July 23, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding.

Mr. WILLIAM J. AMMEN, for appellant.

Messrs. WILSON, MOORE & McILVAINE, for appellees Speer and LeMoyne.

MORAN, P. J.   Appellant filed his bill as administrator *de bonis non*, with the will annexed, of the estate of Charles W. Ricketson, deceased, against appellee Speer and several co-defendants.   The bill states the death of Ricketson in Pennsylvania in September, 1886, the appointment of one William Phillips as administrator of the estate of said Ricketson by the Orphans Court of Allegheny County, Pennsylvania, the appointment of one Benjamin F. Quimby, as administrator of said estate by the County Court of Cook County, Illinois, in 1867, and the subsequent appointment of complainant as administrator *de bonis non*, with the will annexed, by the County Court of Cook County, in May, 1868, and his due qualification as such administrator; that soon after his appointment as such administrator he filed an inventory of all the property of said

Shepard v. Speer.

estate then known to him, and afterward in 1870, he discovered other property belonging to the estate, and thereupon filed an inventory thereof; that in 1869 a claim was filed and allowed against said estate in favor of one Benjamin F. Quimby, for the sum of $32,800, to be paid in due course of administration; that said claim was based upon a decree obtained by said Quimby against the deceased, Ricketson, and George T. Brown, James B. Cloud, Josiah Rhodes and Reese Owens as copartners under the name of Brown & Cloud; that the members of said firm of Brown & Cloud at the time the said decree was obtained were non-residents of the State of Illinois, and were without any assets or property within reach of execution, except whatever interest said Rhodes had in a claim against the estate of said Ricketson, deceased; that subsequently said decree of Quimby was duly assigned by him to George F. Harding, who now owns the same; that other claims were allowed against the estate by the County Court of Cook County, the amount of the claims, date of allowance and the names of the claimants being set out; that said Phillips, who was appointed administrator in Pennsylvania, distributed the estate of said Ricketson in Pennsylvania in payment of creditors of Ricketson, and that said Phillips has since departed this life; that Josiah Rhodes claimed to hold a large claim against the estate of Ricketson, which claim was not assignable by law; that said Rhodes assigned, or attempted to assign, the same to Phillips, while Phillips was administrator of said Ricketson's estate; and that said Phillips by some means secured the allowance of said claim in the Orphans Court in the name of said Rhodes, though secretly for his own use, against the estate for the sum of upward of $38,000; that said Phillips had, in fact, prior to the allowance of said claim, bought the same of said Rhodes with money then in his hands as administrator of said estate, paying therefor not more than $30,000; that afterward a dividend was paid upon said Rhodes' claim, amounting to upward of $11,000, which should have been then credited as a payment thereon; and that other payments were made on said claim which should have been credited thereon, the amount of which complainant can not state.

That afterward, on December 14, 1869, said Phillips filed
in the County Court of Cook County the said Rhodes
claim against said estate in the name of Rhodes for the use of
said Phillips, for the amount of $39,580, and in support thereof
filed the affidavit of said Josiah Rhodes averring said amount
to be due thereon after allowing all just credits and set-offs;
that said Phillips and said Rhodes thus fraudulently concealed
the facts as to the purchase of said claim and the divers cred-
its and set-offs thereto, and payments thereon, which matters
were unknown to complainant; that afterward, in 1870, said
claim came on for trial in said County Court, and was allowed
for $38,845, payable *pro rata* out of such estate as might be
discovered subsequent to the expiration of two years from the
first letters of administration; that complainant appealed
from said judgment of the County Court to the Superior
Court, and that afterward, in 1871, said appeal came on for trial
in the Superior Court, and judgment was rendered therein
against said estate for the sum of $32,425, complainant hav-
ing still no knowledge of the said dividends, payments, cred-
its or set-off upon or against said claim; that complainant
appealed the said judgment to the Appellate Court, and said
judgment was reversed and remanded to the Superior Court;
that while the appeal was pending in the Appellate Court one
Lizzie Allen filed a bill in her own name against said Phillips,
said Speer, one Sankey, said Josiah Rhodes and complainant,
from the allegations of which bill complainant learned that
said Rhodes' claim was, in fact, wholly paid and satisfied; that
such proceedings were had in said Allen suit that a decree
perpetually restraining said Phillips, as administrator, and
the said Speer, Sankey and Josiah Rhodes, and each of them,
from dismissing the appeal from said judgment allowing
Rhodes' claim then pending in the Superior Court; that
recently and in February, 1890, the attorneys representing
several of the defendants, without the knowledge of com-
plainant, or his attorney, procured the dismissal of said
appeal by the Superior Court, and an order for a *pro-
cedendo* directed to the Probate Court of Cook County;
that complainant or his attorney did not know of said dismissal

until after the expiration of the term at which said order was entered, and that said order was purposely concealed from him, and from the parties in interest desiring a trial of said cause by defendants herein, who were interested in preventing same; that it is claimed by said defendants that the Superior Court has no power to set aside the order dismissing said decree, and that no court of law has power to reduce, in any way, the amount of said wrongful judgment of allowance of said Rhodes' claim; that the Probate Court of Cook County, in which the administration of said estate is now pending, has no power to open said judgment allowing said Rhodes' claim, or to allow any credits or deductions or set-offs against the same, or to account for the payments and dividends made on the said claim in Pennsylvania; that since claimant's appointment as administrator, the estate has been involved in tedious and expensive litigation; that the property included in the first and second inventory has been sold, and the proceeds thereof administered so that there remains in the hands of complainant, as administrator, the sum of about $18,000; that there are difficulties in adjusting the cost that ought to be equitably charged against the present owners of claims against the estate; what remains will not pay all the claims; and that the *pro rata* to be allowed on claims is difficult to ascertain and determine, and that such adjustment and apportionment can not be done except in a court of equity.

There are allegations of liability on the part of different claimants to contribute to the payment of claims held by other claimants, and showing that no distribution of the remaining assets can be finally made to the parties entitled thereto until the true amount of said Rhodes' claim be adjudicated; and statements showing the nature of the Rhodes claim and the offsets to it and the credits upon it and the fraud of Rhodes and Phillips and the present owners of the Rhodes claim, in concealing the facts and the truth from complainant, and procuring the allowance of said claim when the same was, in fact, fully paid and discharged.

There are other allegations in the bill not necessary to set out in detail, as they do not create any separate and distinct foundation for equitable jurisdiction.

To this bill the defendants Speer and LeMoyne interposed a demurrer, which demurrer was sustained by the court, on the ground that the bill did not set forth any facts requiring the aid of a court of equity, and that the Probate Court had full power and jurisdiction in the settlement of the estate to grant all the relief to all the parties to which they were entitled in law or in equity.

From the decree so entered this appeal is prosecuted. It is strenuously urged that the Rhodes claim is *res judicata* in the Probate Court; that the court having once passed on such claim is powerless to reopen it. It is the general doctrine that Probate Courts may, in the adjudication of matters committed to their jurisdiction, exercise equitable, as well as legal, power. "Whenever, within the scope of the jurisdiction confided to them, the relief to be administered, the right to be enforced, or the defense to an action properly pending before them, involves the application of equitable principles, their powers are commensurate with the necessity demanding their exercise, whether legal or equitable in their nature." Woerner on the Law of Administration, Sec. 149.

It has been said by our own Supreme Court that "the Probate Court may exercise equitable jurisdiction on the settlement of estates—not its full jurisdiction, but such as is adapted to its organization and the mode of proceeding in that tribunal; the County Court is as competent to afford relief in this case as a court of equity, and it pertains to the settlement of the estate." Wadsworth v. Connell, 104 Ill. 369.

As we understand the allegations of this bill, there is no case made that is not entirely within the power of the Probate Court in the administration of the estate to fully adjudicate upon and grant complete relief. Appellant's counsel states in his brief that the *gravamen* of the bill is that the judgment (meaning the judgment allowing the Rhodes claim) is wholly inequitable, and ought not to share *pro rata* in the assets, but that it should be reduced to a small amount or nothing, as the proof might be, before distribution is ordered; that said judgment is fraudulent and unconscionable by reason of equities and facts existing antecedent to the judgment of the County Court allowing the claim; and that complainant

was precluded from setting up and obtaining the benefit of defenses going to the roots of the claim by the concealment and fraud of the claimant, and by the dismissal of the appeal in the Superior Court, and wholly without default or neglect of appellant. If the defenses were known to the administrator or other parties in interest at the time of the allowance of the claim in the County Court, and had been set up and passed upon in that court, the judgment would be conclusive, and neither the Probate Court nor a court of equity would have power to open the question for a new trial. If the fraudulent concealment alleged, and the other wrongs and frauds stated in the bill are of a character to authorize a court of equity to interfere, that court administering the estate, it is difficult to see why the Probate Court, which has full power to reach just results in the administration and distribution of estates, can not grant the relief.

It is nowhere denied by any authority which we have been able to find, that that court has power to undo what has been therein done, by fraud in the administration of an estate, whether it is in the procurement of the allowance of a claim by fraud, or in an order finding a settlement.

In Long, Administrator, v. Thompson, 69 Ill. 27, the power of the County Court to set aside an order of distribution several years after it was made, was upheld, and the proceeding in the County Court was likened in principle to a bill in chancery for distribution; as to the authority to set aside the order, the court said: "We must regard it as incident to those general powers that a court possesses, which are indispensable to their right exercise. It saves the delay and expense of appeal and writs of error, or proceedings in equity, and is otherwise productive of convenience and promotive of the ends of justice." The allowance of a claim is not an appropriation of any part of the estate to its payment; it is a mere determination of the amount of the claim upon the evidence then produced in court. The statute makes it the duty of the Probate Court to order distribution *pro rata*, and each claimant seeks the benefit of such order for the payment of his claim. When the claimant comes to the court for payment, he is asking the aid of the

court to enforce or satisfy the claim adjudicated; he is then seeking the most essential and beneficial relief against the estate. In granting that relief, as well as allowing the claim in the first instance, the Probate Court may exercise equitable power and jurisdiction, precisely the same as if the estate was being administered in an equity court with full chancery powers. The very essence of the contention here is, that if equity will take jurisdiction of the administration of this estate and the distribution of the assets among the claimants, it ought not to, and will not, allow the payment of this claim because it is unjust and fraudulent. It is indeed true that the court is asked to set aside the fraudulent judgment, and grant a new trial, but that is only a method of procedure, not essential, and the relief can be granted without, in fact, setting aside the fraudulent judgment. The power of a court of equity to thus proceed in the distribution of the estate can not be doubted, and the power of the County Court to do justice in that method in the administration of insolvent estates has been repeatedly recognized. In Heuer v. Schafner, 30 Ill. App. 337, it was held that the County Court properly denied satisfaction of certain judgments obtained against the insolvent, on the ground that they were fraudulent preferences.

The judgments were not interfered with, but their preferential payment was refused and an equal distribution of the estate among the creditors directed.

In Hier v. Kaufman, 134 Ill. 215, it was expressly held that the County Court had no power to interfere with the judgment and set it aside, but that it might inquire as to the justice and right of the judgment, and order it paid, or not, as justice might require.

This is in accordance with the well settled principle that when a party comes into a court of equity asking the benefit of a former judgment or decree, he must be prepared to show, if the case requires it, that the decree was just and right. See Wadhams v. Gay, 73 Ill. 415.

In exercising its insolvent jurisdiction, the County Court is clothed with the same equitable powers that the Probate Court is in the administration of estates, and the rights and

duty of the County Court to deal with all questions presented and to apply equitable principles whenever a just result required their application in insolvent matters, has been repeatedly recognized. In Field v. Ridgley, 116 Ill. 424, the Supreme Court said : "The County Court, when sitting as an insolvent court, is clothed with ample power to pass upon and settle equitable as well as legal claims against the estates in the hands of the assignee, and the jurisdiction of that court having once attached, a court of equity will not interpose except, perhaps, under extraordinary circumstances, and to prevent a failure of justice." The exercise of equitable power in the administration of estates has been recognized in Wolf v. Beaird, 123 Ill. 588; In re Corrington, 124 Ill. 363; Millard v. Harris, 119 Ill. 185, and in numerous other cases; and in Heustis v. Johnson, 84 Ill. 61, a prior case is followed, holding that "a court of chancery will not exercise jurisdiction over the administration of estates except in extraordinary cases."

There may be circumstances of so extraordinary a character that when shown, chancery may take the administration of an estate and proceed with its settlement, but in our opinion no such circumstance or circumstances is disclosed by the bill under consideration.

We are of opinion that for anything that appears from the allegations of the bill the Probate Court has power, full and adequate, to settle the estate, direct the distribution and discharge the complainant from his trust, and that there is no occasion to deprive said court of power and jurisdiction over the estate. All matters of set-off and contribution justly existing between the parties who are claimants to the fund in the hands of the administrator, can be fully adjusted and determined in that court, and if the evidence shows a case which would authorize a court of chancery to deny the payment of the so-called Rhodes claim, the Probate Court is fully clothed with power to grant the same relief.

Appellant's counsel has earnestly contended that the decree dismissing the bill for want of equity was erroneous. The wording of the decree might have been otherwise, but the decree in Field v. Ridgley, *supra*, was in the same form and

was affirmed. The real ground of dismissal is, that there is an adequate power in the Probate Court to grant the relief asked. Of course, the dismissal must be understood to be without prejudice to the complainant or other parties in interest, to present the same questions to the Probate Court which were sought to be presented by the bill, and that the dismissal will not bar any relief to which they may be in law and equity entitled.

The judgment of the Circuit Court must be affirmed.

*Judgment affirmed.*